**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SUSAN R. SHUEY and JOHN SHUEY,

      Plaintiffs,

          v.

WILLIAM G.SCHWAB, EAST PENN
TWP., OFFICER BRIAN P. HOROS and
OFFICER ALAN W. BEISHLINE,

      Defendants.

CIVIL ACTION NO. 3:08-CV-1190

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants William Schwab, Eastern Penn Township, Brian Horos, and Alan Beishline's Motion to Dismiss (Doc. 4) Plaintiffs Susan and John Shuey's Complaint (Doc. 1.). The motion will be granted in part and denied in part for the reasons discussed below. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction"), and over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 ("supplemental jurisdiction").

## BACKGROUND

The allegations in Plaintiff's Complaint are as follows:

### I.    Factual Background

Plaintiffs are Susan Shuey ("Mrs. Shuey") and her husband John Shuey ("Mr. Shuey"). (Compl. ¶¶ 4-5.)[1] Defendant East Penn Township is a municipal corporation duly organized

---

[1] Subsequent to the filing of their complaint, Plaintiffs have informed the Court that John Shuey is now deceased. (Doc. 24.) Survival of both federal § 1983 claims and state law claims is a question of state law. *Robertson v. Wegmann*, 436 U.S. 584, 589 (1978).

under the laws of the Commonwealth of Pennsylvania. (Compl. ¶ 7.) Defendant William Schwab ("Schwab") was at all relevant times a Supervisor of East Penn Township. (*Id*. ¶ 6.) Schwab was responsible for the formation and implementation of the polices, practices, and procedures of the East Penn Township Police Department. (*Id*. ¶ 6.) Defendants Officer Brian Horos ("Horos") and Officer Alvin Beishline ("Beishline") were at all relevant times a sworn officers of the East Penn Township Police Department. (*Id*. ¶¶ 8-9.)

A. Police Department Policies

East Penn Township purchased electronic incapacitation devices, otherwise known as tasers, in April 2006. (Compl. ¶ 57.) The Township sent Horos to train in their use in May 2006. (*Id*. ¶ 57.) Horos then allegedly trained Beishline and others in the use of tasers. (*Id*. ¶ 58.) Beishline was not, however, qualified to use a taser during the time period relevant to this action. (*Id*. ¶ 59.)

Schwab conceived and directed a plan for the East Penn Township Police Department to "cite as many motorists in the Township as possible in order to create a revenue stream resulting from the fines imposed." (Compl. ¶ 12.) The plan was to cite drivers for violations of 75 PA. CONS. STAT. § 3111, which imposes fines and costs in the amount of $106.50, but assesses no points against an offender's licence. (Compl. ¶ 21.) This would generate easy income for the township because those cited would often not hire legal counsel or otherwise defend against a citation without license implications. (*Id*.¶ 22.)

_____

Under Pennsylvania law, all causes of action survive the death of a party. 42 PA. CONS. STAT. § 8302. Even assuming that John Shuey is deceased, his claims would survive and pass to his estate or other predecessor in interest.

B.  June 23, 2006 Incident

On June 23, 2006, Plaintiffs parked their vehicle safely off the side of Lizard Creek Road in East Penn Township and approached Officer Horos to discuss a traffic citation given to their son earlier that day.  (Compl. ¶¶ 10-11.)  At that time, Horos was in the process of issuing a traffic citation to a motorist he had stopped.  (*Id*. ¶ 10.)  On three (3) separate occasions Horos asked the Plaintiffs what they wanted, and they responded that they would wait until he completed his business.  (*Id*. ¶ 15.)  At all times the Plaintiffs remained a safe distance behind Horos' police vehicle and off the roadway.  (*Id*. ¶ 16.)  Plaintiffs ultimately informed Horos that they wished to discuss the traffic citation given to their son.  (*Id*. ¶ 17.)  Officer Beishline then arrived in a separate police cruiser, and Horos told the Plaintiffs that it was Beishline who had issued the citation.  (*Id*. ¶ 18.)  Beishline rolled down his driver's side window and spoke to Mr. Shuey.  (*Id*. ¶ 19.)  At no time during this discussion did Beishline exit his vehicle.  (*Id*. ¶ 20.)  Mrs. Shuey pointed out to Beishline that the citations under § 3111 did not assess points against an offender's license, and in response Beishline became upset and told her in the future he would "increase the charge and tell all offenders to thank her."  (*Id*. ¶ 21.)

Mrs. Shuey terminated the conversation and began walking back towards her car. (Compl. ¶ 23.)  Beishline remained in his vehicle talking with Mr. Shuey.  (*Id*. ¶ 23.)  As Mrs. Shuey crossed the roadway diagonally, she necessarily had to pass Horos.  (*Id*. ¶ 24.)  As she walked away from the area venting, Horos yelled to her "if you raise your voice I'm going to arrest you."  (*Id*. ¶ 25.)  Upon hearing this, Mrs. Shuey looked over her shoulder and asked, "[i]f I raise my voice, you're going to arrest me?"  (*Id*. ¶ 27.)  She continued walking

3

away from Horos.  (*Id*. ¶ 27.)  Horos responded by again threatening to arrest Mrs. Shuey.  (*Id*. ¶ 28.)  As she continued to walk away from Horos, across the grass berm and off the roadway, Horos violently grabbed her arm from behind and spun her around.  (*Id*. ¶ 30.)  Horos picked her off her feet and slammed her to the ground, landing on top of her.  (*Id*. ¶ 32.)  One of the officers threatened to pepper spray Mrs. Shuey as she lay trapped on the ground.  (*Id*. ¶ 36.)  Beishline then proceeded to taser Mrs. Shuey two (2) times while she was pinned on the ground.  (*Id*. ¶ 39.)  Beishline and Horos handcuffed Mrs. Shuey's hands behind her back.  (*Id*. ¶ 42.)  Before being grabbed by Horos, Mrs. Shuey was never told that she was under arrest.  (*Id*. ¶ 53.)  At no time did she resist or assault either officer.  (*Id*.¶ 54.)  During the incident, Mrs. Shuey could hear her husband asking the officers to stop and calling out for someone to film the incident.  (*Id*. ¶ 42.)  When Mr. Shuey asked Horos and Beishline to stop, they threatened to arrest him.  (*Id*. ¶ 44.)

Mrs. Shuey was transported to the police station and placed in a chair with her hand still cuffed behind her back.  (Compl. ¶ 45.)  She requested that Horos loosen the handcuffs, but he refused and mocked her.  (*Id*. ¶ 46.)  Papers were thrown in her face, but she could not read them because her glasses had been broken.  (*Id*. ¶ 48.)  While being transported for arraignment, Horos and Beishline berated her and often used profanity.  (*Id*. ¶ 49.)  During the process Mrs. Shuey was so terrified that she defecated and urinated in her clothing.  (*Id*. ¶ 51.)

## II.    Procedural Background

Plaintiffs filed their Complaint in the United States District Court for the Middle District of Pennsylvania on June 23, 2008.  (Doc. 1.)  Defendants filed a Motion to Dismiss the

Plaintiffs' Complaint on July 14, 2008. (Doc. 4.) After Plaintiffs failed to respond to this motion and this Court's order to respond, the motion was granted as unopposed on September 9, 2008. (Doc. 12.) After appeal to the Third Circuit Court of Appeals, this Court granted Plaintiffs' Motion for Reconsideration and permitted time to respond. (Doc. 23.) Plaintiffs filed a Brief in Opposition, along with a Suggestion of Death as to Mr. Shuey, on January 6, 2010. (Docs. 24-25.) The Defendants' Motion to Dismiss has now been fully briefed by both parties, and is ripe for disposition.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a

defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

**DISCUSSION**

**I.     Federal Causes of Action**

A.  Section 1983 - Excessive Force (Count II)

At Count II the Plaintiffs allege that Horos and Beishline used excessive force against both Plaintiffs in violation of their Fourth Amendment rights.  The Fourth Amendment protects individuals against unreasonable search and seizure by the government.  U.S. Const. amend IV.  "Use of excessive force by a law enforcement officer is considered a 'seizure' under the Fourth Amendment . . . ." *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004).  To make out an excessive force claim under the Fourth Amendment, a plaintiff must show that an unreasonable seizure occurred.  *Curley v. Klem*, 499 F.3d 199, 203 n. 4 (3d Cir. 2007).  A seizure is reasonable under the Fourth Amendment if, under the totality of the circumstances, "the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight.  *Id*. at 396.  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

Mrs. Shuey clearly alleges a sufficient claim as to the use of excessive force.  She alleges that Horos and Beishline twisted her arm (Compl. ¶ 30), slammed her to the ground

(*Id*. ¶ 39), threatened to use pepper spray (*Id*.¶ 36), and tasered her (*Id*. ¶ 39), all without justification. Defendants argue that the existence of probable cause defeats Mrs. Shuey's claim. This argument fails for two reasons. First, assuming the allegations in the complaint to be true, Plaintiffs specifically allege that there was no justification for the arrest. (*Id*. ¶¶ 30, 54.) Second, even if there was probable cause to arrest, an unreasonable amount of force could have been used in effectuating that arrest. Plaintiffs allege that after Mrs. Shuey was taken to the ground and pinned, she was threatened with pepper spray (*Id*. ¶ 36) and was tasered twice (*Id*. ¶ 39) when she did not resist the arrest. (*Id*. ¶ 42.) Assuming the allegations to be true, Plaintiffs would clearly establish excessive force was used against Mrs. Shuey.

Mr. Shuey, however, alleges only that Horos and Beishline "threatened to arrest him." (Compl. ¶ 44.) He does not allege that *any* physical force was used against him. When making a claim of excessive force, if the physical force used is not excessive, then merely adding verbal threats cannot convert it into an unconstitutional use of excessive force. *Hudson v. Goob*, 2009 WL 789924, *12 (W.D. Pa. 2009) (citations omitted). Plaintiffs argue that verbal commands constitute the lowest level on the "use of force" continuum used by many police departments, and that therefore, Defendants Horos and Beishline used a low level of force against Mr. Shuey. They argue that even this low level of force was unreasonable. Plaintiffs are correct that the absence of physical injury or contact does not necessarily mean that excessive force was not used. *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir 1997) (claim of excessive force for drawing and aiming firearm at plaintiff defeated because conduct was reasonable). Here, however, the alleged threats to arrest Mr. Shuey

8

standing alone cannot support a claim of excessive force. *Page v. Forry*, 2009 WL 3109828, *2 (D. Del. Sept. 29, 2009) ("Verbal abuse and harassment does not rise to the level of a constitutional violation."); *see e.g. S.M. v. Lakeland School Dist.*, 148 F.Supp.2d 542, 551 (M.D. Pa. 2001) (Fourteenth Amendment, which protects against excessive force between arrest and conviction, does not protect from verbal abuse or harassment.)  Defendants' motion will be denied at Count II as to Mrs. Shuey's claim , but granted as to Mr. Shuey's claim.

   B.  Section 1983 - Failure to Intervene (Count IV)

   At Count IV the Plaintiffs allege that Horos and Beishline should also be held responsible for any acts committed by the other officer because they each had a duty to intervene to stop the use of excessive force.  "Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  An officer is liable under § 1983 for such a failure, but only if there is a "realistic and reasonable opportunity to intervene." *Id*. at 650-51.  The Plaintiffs allege that the officers communicated and worked collectively during the use of force.  (Compl. ¶ 56.)  As a result, Mrs. Shuey sufficiently alleges a failure to intervene against each officer to the extent they observed the other using excessive force.  As stated above, Mr. Shuey has failed to sufficiently allege an underlying claim of excessive force.  Mr. Shuey, therefore, has also failed to state a claim for failure to intervene.  Defendants' motion to dismiss Count IV will be denied as to Mrs. Shuey's claims, and granted as to Mr. Shuey's claims.

C.  Section 1983 - Supervisory Liability (Count III)

At Count III the Plaintiffs allege that Horos and Schwab should be held liable for the injuries sustained by the Plaintiffs under a theory of supervisory liability.  In order for a supervisor to be liable under § 1983, a plaintiff must show more than *respondeat superior* liability.  Rather, the plaintiff must show that the supervisor played a personal role in the violation of plaintiff's rights.  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).  Such a personal role can be demonstrated by the supervisor's personal conduct, personal direction, or by "actual knowledge and acquiescence."  *Id.*  (quoting *Rode v. Dellarciprete*, 845 F.2d 1207 (3d Cir. 1988)); *see also Chernavsky v. Twp. of Holmdel Police Dep't*, 136 Fed. App'x 507, 509 (3d Cir. 2005).  Plaintiffs fail to allege, however, that either of these Defendants specifically instructed that excessive force be used against Mrs. Shuey or other similarly situated individuals.  Plaintiffs allege only that Schwab created the traffic citation policy.  They do not allege, for example, that Schwab instructed officers to use excessive force when issuing the traffic citations.  Against Horos, the Plaintiffs allege only that Horos instructed Beishline on the use of tasers, not that he instructed Beishline to use the taser on Mrs. Shuey.  Additionally, any claims for supervisory liability arising from Horos' conduct at the scene merely duplicate the failure to intervene claim at Count IV.  Because Plaintiffs fail to state a claim for supervisory liability against either Horos or Schwab, Defendants' motion will be granted as to Count III.

D.  Section 1983 - Municipal Liability (Count V)

At Count V the Plaintiffs allege that East Penn Township should be held liable for the injuries suffered by the Plaintiffs.  A municipality may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or

10

acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). A plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" to prevail. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." *Id.* at 404. The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Brown*, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "'that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional]' injury.'" *Id.* at 325 (citations omitted).

Plaintiffs allege two policies by East Penn Township: (1) the traffic citation policy, and (2) the training program for the use of tasers. (Compl. ¶¶ 12, 21-22, 57-59.) As to the traffic citation policy, it cannot be said that it was the "moving force" behind the Plaintiffs injuries. The Plaintiffs do not allege that the traffic policy encouraged the use of force, nor do they allege they were stopped as a result of the policy. Plaintiffs fail to state a claim of municipal liability based upon the traffic citation policy. Plaintiffs also fail to state a claim regarding the taser training program, because they do not allege that the training program was established by those whose acts may be seen as creating official policy. Plaintiffs allege that Schwab was the municipal policy-maker, but that *Horos* was responsible for the training. Because

Plaintiffs do not allege conduct by a policy-maker or approval from a policy-maker, their claim for municipal liability based upon the taser training also fails. Defendants' motion will be granted as to Count V.

E. Section 1983 - Civil Conspiracy (Count VI)

At Count VI the Plaintiffs allege that all of the Defendants engaged in a civil conspiracy to violate the Plaintiffs' rights. Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of any federal right shall be liable to the party injured. 42 U.S.C. § 1983. In order to establish a conspiracy claim against the Defendants pursuant to Section 1983, there is a requirement of "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Williams v. Fedor*, 69 F.Supp.2d 649, 665 (M.D. Pa. 1999) (Vanaskie, J.), *aff'd* 211 F.3d 1263 (3d Cir. 2000) (citing *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999)). "'To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *Id.* at 666 (citing *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir.1993)).

Because there was no violation of Mr. Shuey's rights, as discussed above, there could be no conspiracy to violate his rights. Plaintiffs successfully allege a violation of Mrs. Shuey's rights which could support a conspiracy count. They allege that Horos and Beishline communicated and conspired to violate Mrs. Shuey's rights. (Compl. ¶ 56.) This is sufficient at this stage of the proceedings against those two defendants. There are, however, no allegations that Schwab or East Penn Township acted or communicated in furtherance of the violation of Mrs. Shuey's rights. Defendants' motion will be granted at Count VI as to Mr.

Shuey's claim and as to claims against Schwab and East Penn Township, and denied as to Mrs. Shuey's claim against Horos and Beishline.

F.  Section 1983 (Count I)

Plaintiffs also make a general claim at Count I for violations of Plaintiffs' rights.  The count fails, however, to identify specifically what right was violated.  To the extent that they intend to raise the same issues as in Counts II-VI, this Count is duplicative and will be dismissed.  If Plaintiffs intended to articulate a separate theory under this Count, then they have failed to provide put the Defendants on notice of the nature of the claim under Federal Rule of Civil Procedure 8.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  Defendants' motion will be granted as to Count I.

## II.     State-Law Causes of Action

A.  Violations of the Pennsylvania Constitution (Count VII)

Plaintiffs allege at Count VII that the Defendants' use of excessive force also violated their rights under Article I, §§ 8 and 9 of the Pennsylvania Constitution, and thus they are entitled to monetary damages.  The Defendants argue that no private cause of action for damages is available under the Pennsylvania Constitution.  Plaintiffs correctly note that the Supreme Court of Pennsylvania has not ruled on this issue. *Hellmann v. Kercher*, No. 07-cv-1373, 2009 WL 586511, at * 5 (W.D. Pa. Mar. 6, 2009).  While this is true, other courts to consider this issue have uniformly held that the Pennsylvania Constitution does not create a private right of action.  *Id.*; *see R.H.S. v. Allegheny County Dept. of Human Servs., Office of Mental Health,* 936 A.2d 1218, 1225-226 (Pa. Commw. Ct. 2007) *appeal denied,* 954 A.2d 579 (2008) ("neither statutory authority, nor appellate case law has authorized the award of

monetary damages for a violation of the Pennsylvania Constitution") (quoting *Jones v. City of Phila.*, 890 A.2d 1188 (Pa. Commw. Ct. 2006), *appeal* denied, 909 A.2d 1291 (2006)); *Morales v. Taveras*, No. 05-cv-4032, 2007 U.S. Dist. LEXIS 4081, at *55-56 (E.D. Pa. Jan. 18, 2007); Underwood *v. Beaver County Children And Youth Servs.*, No. 03-cv-1475, 2007 WL 3034069, *2 (W.D.Pa. Oct.7, 2007) (citing multiple cases in accord). I agree with these decisions, and find that there is no private cause of action available for seeking monetary damages for violations for the Pennsylvania constitution. Defendants' motion will be granted as to Count VII.

    B. Assault and Battery (Count VIII)

    At Count VIII, the Plaintiffs allege that Horos and Beishline are also liable under Pennsylvania law for assault and battery. Generally, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citing *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)). Assuming Plaintiffs' allegations to be true, they would establish claims assault and battery against Horos and Beishline for Mrs. Shuey. As discussed above, there are no allegations that the Defendants physically contacted Mr. Shuey or attempted to do so, so his claims will be dismissed.

    Defendants argue that they are immune from the state law causes of action under the Pennsylvania Subdivision Tort Claims Act ("PSTCA"). 42 PA. CONS. STAT. § 8541, *et seq*. Section 8541 reads: "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof

or any other person." *Id.* While there are a number of exceptions listed under Section 8542 which do permit liability, none of these are applicable here. *Id.* § 8542(b). An employee of a local agency has immunity if: (1) the local agency has immunity under § 8541, and (2) the employee was acting within the scope of his office or duties when he engaged in the alleged conduct. *Id.* § 8545. However, immunity for an official does not exist when the "act constituted a crime, actual fraud, actual malice or wilful misconduct." *Id.* § 8550. Proof of conduct which surpasses the immunity under the PSTCA requires a "demanding level of fault." *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). At this stage of the proceedings, however, Plaintiffs have sufficiently alleged actual malice or willful misconduct by Beishline and Horos. Defendants' motion for to dismiss will be denied as to Mrs. Shuey's claims at Count VIII, but granted as to Mr. Shuey's claims.

C. Intentional Infliction of Emotional Distress (Count IX)

At Count IX, Plaintiffs bring a claim against Defendants Horos and Beishline for intentional infliction of emotional distress. In order to recover for intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct; (2) which was either intentional or reckless; and (3) which caused severe emotional distress. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987) (citing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979) (en banc)). Outrageous conduct is that which goes beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community. *Id.* (citing *Jones v. Nissenbaum, Rudolph, & Seidner*, 368 A.2d 770, 773 (Pa. Super. Ct. 1976) (citations omitted). The Court must determine, in the first instance, whether the alleged conduct could reasonably be regarded

15

as so extreme and outrageous as to permit recovery. *Jones*, 368 A.2d at 774. At this stage of the proceedings, the Plaintiffs have sufficiently alleged the elements of this claim. For example, the alleged excessive use of force against Mrs. Shuey (Compl. ¶¶ 30-42), and the mistreatment after the arrest causing her to soil her clothing (*Id*. ¶¶ 48-51) establish the elements of this tort. For the same reasons discussed above, PSTCA immunity does not bar Plaintiffs' claims at this time. Defendants' motion to dismiss at Count IX will be denied.

D.  Negligent Infliction of Emotional Distress (Count X)

At Count X, Plaintiffs bring a claim against Defendants Horos, Beishline, and Schwab for negligent infliction of emotional distress. A plaintiff making out a claim for negligent infliction of emotional distress in Pennsylvania must establish the traditional elements of a negligence claim, and must also establish at least one of the following four elements: (1) that the defendant had a contractual or fiduciary duty toward him, (2) that plaintiff suffered a physical impact, (3) that plaintiff was in a "zone of danger" and at risk of an immediate physical injury, or (4) that plaintiff had a contemporaneous perception of tortious injury to a close relative. *Doe v. Phila. Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. Ct. 2000). As discussed above regarding Plaintiffs' claim for supervisory liability, there is no link between Schwab's conduct in formulating the East Penn Township Police Department policy of issuing numerous traffic citations and the Plaintiffs' injuries. This Count will be dismissed against Schwab. As to Defendants Horos and Beishline, Plaintiffs have sufficiently alleged this cause of action.

Defendants argue that they are shielded from this type of negligence action by the PSTCA's immunity provisions. At this stage of the proceedings, Plaintiffs have sufficiently alleged conduct that makes granting PSTCA immunity at this time inappropriate.

Defendants' motion will be denied as to Count X with respect to claims against Beishline and Horos, and granted as to the claim against Schwab.

### E. Loss of Consortium (Count XI)

Plaintiffs' final claim is for Mr. Shuey's loss of consortium with his wife.[2]  Defendants argue that because there are no underlying claims, the loss of consortium claim must also fail.  As discussed above, however, state law claims remain at Counts VIII, IX, and X against Defendants Horos and Beishline.  Against Defendants Schwab and East Penn Township, however, no claims remain.  Therefore, Defendants' motion will be granted at Count XI as to Schwab and East Penn Township, and denied as to Horos and Beishline.

## III.    Requested Relief

### A. Punitive Damages

Defendants argue that there are insufficient allegations to support Plaintiffs' claims for punitive damages, and therefore, these claims should be dismissed.  In suits brought pursuant to 42 U.S.C. § 1983, punitive damages may be recovered from individual officers but not from government entities, if the officers "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  As there are no remaining claims against Schwab or East Penn Township, I need not address Plaintiffs' claims for punitive damages against them.  Against Horos and Beishline, Plaintiffs' allegations of their conduct in arresting and transporting Mrs. Shuey could support a finding of punitive damages.

---

[2]  While Plaintiffs' complaint does not specify that the loss of consortium claim is limited to the state law causes of action, Plaintiffs concede that loss of consortium is so limited in their Brief in Opposition.  (Pls. Br. in Opp'n at 23.)

Defendants' request to dismiss the claim for punitive damages will be denied.

B.  Request for Injunctive Relief

In addition to compensatory and punitive damages, Plaintiffs request injunctive relief for these alleged constitutional violations.   In deciding whether to grant a permanent injunction, the Court must consider whether: "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).  The only alleged constitutional violations remaining relate to the excessive use of force by Horos and Beishline, their failure to intervene in the other's conduct, and their conspiracy to deprive Mrs. Shuey of her constitutional rights.  Plaintiffs make no allegation that they will be irreparably injured without injunctive relief, or that there is a risk of these alleged violations occurring again.  The only continuing policy they articulate relates to the issuing of excessive traffic violations, which as stated above is not linked to the alleged injuries here.  Defendants' motion to dismiss Plaintiffs' requests for injunctive relief will be granted.

C.  Suits in Official Capacity

When a defendant is sued in his official capacity, "the real party in interest . . . is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)).  The Supreme Court instructed that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky*, 473 U.S. at 166.  In other words, a suit against a public official in his official capacity is a suit against the government entity for which he works. *See id.* at 166 & n.12,

18

; *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 432 (E.D. Pa.1998). "Because local governments may be sued directly, official capacity suits are unnecessary." *Winfree v. Tokai Fin. Servs., Inc.*, No. CIV. A. 99-2970, 2000 WL 233240, at *3 (E.D. Pa. Mar. 1, 2000) (citing *Kentucky*, 473 U.S. at 166; *Mancini v. Lester*, 630 F.2d 990, 991 n.3 (3d Cir.1980); *Satterfield*, 12 F. Supp. 2d at 432); *see also Burton*, 121 F. Supp. 2d at 812. As discussed above with respect to Plaintiffs' claims at Count V for municipal liability, Plaintiffs fail to allege a policy or custom of the township that caused their injuries. Because the Plaintiffs do not allege a sufficient cause of action against the township, they also fail to do so against the individual defendants in their official capacities.

Plaintiffs argue that suits against individuals in their official capacities may be used to seek injunctive relief. As discussed above, however, Plaintiffs' allegations do not support their request fornot be entitled to injunctive relief. Defendants' motion to dismiss will be granted as to all official capacity claims.

## IV. Motion to Strike

Defendants move to strike several portions of Plaintiffs' Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) provides that:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

FED. R. CIV. P. 12(f). Generally, a motion to strike will be denied, unless it can be shown that

no evidence in support of the allegation would be admissible. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (3d Cir. 1976); *see also Lyon Fin. Servs. v. Woodlake Imaging, LLC*, No. 04-3334, 2005 U.S. Dist. LEXIS 2011, at *26 (E.D. Pa. Feb. 9, 2005) (stating same). Accordingly, courts should not tamper with the pleadings unless there is a strong reason for so doing. *Id.*

### A.  Jury Request

Defendants first request that this Court strike paragraph 130 which demands a jury trial with twelve (12) members.  While Defendants are correct that per local rules this Court need not provide a civil jury larger than eight (8) members, the fact that Plaintiffs requested a larger amount is not redundant, immaterial, impertinent, or scandalous.  Defendants' request to strike will be denied.

### B.  Damages Request

Defendants next request that this Court strike paragraph 131 which demands a sum in excess of $150,000.  While Plaintiffs need not have requested an amount in their Complaint, and in fact could not request a specific amount before the jury, that does not make the statement redundant, immaterial, impertinent, or scandalous.  Defendants' request to strike will be denied.

### C.  References to the Traffic Citation Policy

Defendants also request that any reference to the township policy of making unwarranted traffic stops be struck as scandalous.  While the policy does not form the basis of any of the Plaintiffs' claims, it does provide background factual information as to why Plaintiffs accosted Officers Horos and Beishline along the roadside, and be relevant to the "reasonableness" of the officers in arresting Mrs. Shuey.  Defendants' request will be denied.

**CONCLUSION**

For the foregoing reasons, Defendants' motion will be granted in part and denied in part. Specifically, Plaintiffs' claims at Counts I, III, V and VII, as well as Mr. Shuey's claims at Counts II, IV, VI and VIII, will be dismissed for failure to state a claim. Plaintiffs' claims against Defendants Schwab and East Penn Township, as well as Horos and Beishline in their official capacities, will also be dismissed for failure to state a claim. Plaintiffs' requests for injunctive relief will be dismissed for failure to the harm is likely to occur again. As to the remaining claims against Defendants Horos and Beishline in their individual capacities, Defendants' motion to dismiss will be denied.

An appropriate Order follows.


 February 4, 2010                            /s/ A. Richard Caputo
Date                                        A. Richard Caputo
                                            United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUSAN R. SHUEY and JOHN SHUEY,

     Plaintiffs,

          v.

WILLIAM G.SCHWAB, EAST PENN
TWP., OFFICER BRIAN P. HOROS and
OFFICER ALAN W. BEISHLINE,

     Defendants.

CIVIL ACTION NO. 3:08-CV-1190

(JUDGE CAPUTO)

## ORDER

**NOW**, this  4th  day of February, 2010, **IT IS HEREBY ORDERED** that Defendants'

Motion to Dismiss Plaintiffs' Complaint (Doc. 4) is **GRANTED IN PART** and **DENIED IN**

**PART** as follows:

(1)    Counts I, III, V, and VII are **DISMISSED**.

(2)    Plaintiff John Shuey's claims at Counts II, IV, VI, and VIII are **DISMISSED**.

(3)    Defendant William Schwab is **DISMISSED**.

(4)    Defendant East Penn Township is **DISMISSED**.

(5)    Plaintiffs' requests for injunctive relief is **DISMISSED**.

(6)    Plaintiffs' claims against William Schwab, Brian Horos, and Alan Beishline in

their official capacities are **DISMISSED**.

(7)    Defendants' motion is **DENIED** as to the remaining Counts.

                  /s/ A. Richard Caputo
                 A. Richard Caputo
                 United States District Judge